UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONALD K. HOOKS,<br><br>                Petitioner,<br><br>   v.<br><br>STARBUCKS CORPORATION,<br><br>                Respondent. | CASE NO. 2:23-cv-01000-LK<br><br>ORDER REGARDING HOOKS' MOTION FOR AN EXPEDITED HEARING, ETC. AND STARBUCKS' CROSS-MOTION FOR EXPEDITED DISCOVERY, ETC. |

This matter comes before the Court on Petitioner's motion "for an order to expedite these proceedings, adjudicate this matter on affidavit and documentary evidence, and for an order governing requests for expedited discovery," Dkt. No. 19 at 2,[1] and Respondent Starbucks Corporation's cross motion for expedited discovery and an evidentiary hearing, Dkt. No. 41 at 1. The Court grants both parties' motions in part and denies them in part.

---

[1] As in *Lomax v. Starbucks Corporation*, Case No. 1:23-cv-01426, Dkt. No. 17 (D. Colo. June 22, 2023) Petitioner improperly filed a request for an order governing requests for expedited discovery before the issue was ripe because Starbucks had not requested expedited discovery. This tactic forced Starbucks to either choose to have one brief rather than the two it would have had in the normal course had it been the movant, or to file a cross motion, giving Petitioner more briefing on the topic than it would have had in the normal course. Either choice would inure to Petitioner's benefit. Similar gamesmanship in the future will result in the Court striking the submission and/or imposing sanctions.

ORDER REGARDING HOOKS' MOTION FOR AN EXPEDITED HEARING, ETC. AND STARBUCKS' CROSS-MOTION FOR EXPEDITED DISCOVERY, ETC. - 1

## I. BACKGROUND

Petitioner Ronald K. Hooks, Regional Director of the Nineteenth Region of the National Labor Relations Board (the "Board"), filed this action in July 2023 seeking an injunction against Starbucks under Section 10(j) of the National Labor Relations Act ("NLRA"). Dkt. Nos. 1, 22; 29 U.S.C. § 160(j). The Board contends that Starbucks engaged in unfair labor practices by combining three stores into a new "Heritage District" to quell a nascent union organizing campaign and by discriminating against union supporters in hiring for Heritage District jobs. Dkt. No. 22 at 12–19. The Board has scheduled a hearing before an administrative law judge to begin on December 12, 2023 regarding the alleged unfair labor practices. *Id.* at 12.

The Board filed this motion seeking to have its motion for a preliminary injunction considered without discovery and on the affidavits and exhibits filed in support of that motion. Dkt. No. 19 at 4–5. The affidavits are from current and former Starbucks employees attesting to various facts about their employment, their union support or lack thereof, their beliefs about the company's knowledge of their union support, and Starbucks' hiring decisions. Dkt. No. 5-2 (exhibits 12–18). Some employees state that managers questioned them about how they felt about the union, or that other employees told them that they had been subjected to such questioning. *Id.* at 13, 24–25. Some employees indicate whether union supporters were hired. *Id.* at 13 (an employee who openly supported the union was hired at 1st and Pike store while another supporter was not); *id.* at 19 (an employee who openly supported the union was not hired into the Heritage District); *id.* at 64 (same). One employee alleges that a union supporter was not allowed to interview remotely for a Heritage District position, while other employees were allowed to do so. *Id.* at 32–33.

In addition to the affidavits, the Board filed documents from another Board case, 19-RC-297140 (the "representation case"), which arose out of Workers United's June 6, 2022 petition to

represent the hourly baristas and shift supervisors at Starbucks' 1st and Pike store in downtown Seattle. *See* Dkt. No. 41 at 3. The Board has filed a transcript of the hearing in the representation case and the parties' exhibits from that hearing. Dkt. No. 63 at 9–11 (listing exhibits); Dkt. Nos. 6-2, 7, 7-1, 8, 8-1, 9, 10 (exhibits 24–27 therein include the transcript from the representation hearing and the parties' exhibits).[2] The Board argues that the Court should issue its requested injunction—without the inevitable delay of discovery—because its exhibits include sufficient information to meet its burden to demonstrate that an injunction is just and proper. Dkt. No. 19 at 5, 8.

Starbucks cross moved for an evidentiary hearing and discovery. Dkt. No. 41 at 1. It seeks discovery to counter the Board's affidavits, "to test Petitioner's assertion that the employees who were 'displaced' from the legacy 1st & Pike store were likely to have voted for Workers United[,] . . . that the alleged unfair labor practice had a 'chilling' impact on protected activity under the NLRA[,]" and "to determine why some of the alleged 'displaced' employees did not apply to Heritage Market." *Id.* at 6. Starbucks argues that the evidence from the administrative hearing in the representation case is of limited utility because (1) it involved a different issue, (2) the Board excluded from that hearing any evidence of Starbucks' motivation in creating the Heritage District—a key issue in this case—and (3) no evidence was offered regarding any chilling of union support. *Id.* at 4.

It also seeks discovery from the Board in three areas: (1) "the facts, not matters concerning the Board's deliberative process, surrounding and leading up to the decision by the Board to authorize the filing of the Petition"; (2) the reasons for "the Board's (a) nearly 14-month delay

---

[2] The Board dismissed the representation case because it could not determine whether the petitioned-for bargaining unit was appropriate for purposes of collective bargaining, as the 1st and Pike store was closed at the time and would reopen as part of the merged Heritage Market. Dkt. No. 41 at 3.

ORDER REGARDING HOOKS' MOTION FOR AN EXPEDITED HEARING, ETC. AND STARBUCKS' CROSS-MOTION FOR EXPEDITED DISCOVERY, ETC. - 3

from the date Starbucks announced the implementation of the Heritage Market to its filing this Section 10(j) petition, and (b) the 18-month delay from the filing of the first unfair labor practice charge to the scheduling of the administrative hearing in December 2023"; and (3) the evidentiary basis for the Board's requested relief, including "that the Court issue an order rescinding establishment of the Heritage Market at 1st & University and Pike Place, despite there being no allegations of union activity at those stores" and for a notice to be posted and read at the impacted stores. *Id.* at 6–7; *see also id.* at 7 (seeking an "expedited schedule for document requests and interrogatories to the Board, the deposition of the Regional Director or another agent of the Board, and document subpoenas to and depositions of the Union, the individuals who provided the affidavits that Petitioner offers as exhibits with this Petition, and others whom Starbucks learns may have relevant evidence.").

## II. DISCUSSION

The Court first describes the applicable legal framework as a backdrop to this dispute. It then addresses the propriety of discovery.

### A. The Legal Framework

Although the Board "enjoys primary jurisdiction over labor disputes, subject only to narrow judicial review," Section 10(j) of the NLRA "permits the NLRB to petition a federal district court 'for appropriate temporary relief or restraining order' pending the Board's resolution of an unfair labor practice charge." *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 957 (9th Cir. 2010) (quoting 29 U.S.C. § 160(j)). The purpose of Section 10(j) is to "protect the integrity of the collective bargaining process and to preserve the NLRB's remedial power while it processes" unfair labor practices complaints. *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 459–60 (9th Cir. 1994) (en banc), *abrogated on other grounds by Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008).

Where, as here, the respondent does not concede that it violated the law, the Board bears the burden of showing that an injunction is "just and proper." *Id.* at 459. When evaluating requests under Section 10(j), "district courts consider the traditional equitable criteria used in deciding whether to grant a preliminary injunction." *McDermott*, 593 F.3d at 957. Under that familiar rubric, plaintiffs seeking a preliminary injunction must establish a likelihood of success on the merits, a likelihood of irreparable harm, that the balance of equities tips in their favor, and that the public interest favors the issuance of the injunction. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1184 (9th Cir. 2011); *Winter*, 555 U.S. at 20. The likelihood of success in a Section 10(j) proceeding "is a function of the probability that the Board will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that [the appellate court] would grant a petition enforcing that order, if such enforcement were sought." *Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334, 1355 (9th Cir. 2011).

Although the Board argues that discovery is inappropriate in 10(j) proceedings, "the discovery provisions of the Federal Rules of Civil Procedure apply in 10(j) proceedings, as a suit of a civil nature." *Madden v. Milk Wagon Drivers Union Loc. 753*, 229 F. Supp. 490, 492 (N.D. Ill. 1964) (cleaned up); *Sperandeo v. Milk Drivers & Dairy Emps. Loc. Union No. 537*, 334 F.2d 381, 384 (10th Cir. 1964) ("[W]hile this action was brought by the appellant in his official government capacity, he is in no different position than any ordinary litigant and is, therefore, bound by the discovery provisions of the Federal Rules of Civil Procedure in the same respects as any ordinary litigant."). Pursuant to Federal Rule of Civil Procedure 26(b)(1), each party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And expedited discovery is permissible upon a showing of

"good cause." *Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 302 (E.D. Cal. 2016).[3] "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *see also* Fed. R. Civ. P. 26(d), Notes of Advisory Committee on 1993 Amendment (stating that discovery prior to a Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction").

**B.    The Court Allows Limited Discovery**

The Board argues that discovery, even if expedited, is not appropriate in a 10(j) case. Dkt. No. 19 at 6. But courts have allowed the respondent to conduct at least some discovery in 10(j) cases, including in similar cases involving Starbucks. *See Meter v. Minn. Mining & Mfg. Co.*, 42 F.R.D. 663, 664 (D. Minn. 1967) (granting discovery including depositions on the issues raised in the Section 10(j) petition); *Poor v. Starbucks Corp.*, No. 1:22-cv-7255, Dkt. No. 20 & Dec. 19, 2022 Minute Entry (E.D.N.Y. Dec. 2022) (allowing discovery including service of subpoenas and five depositions not to exceed three hours per witness); *Leslie v. Starbucks Corp.*, 1:22-cv-478-JLS, 2022 WL 7702642, at *1–3 (W.D.N.Y. Sept. 23, 2022) (allowing discovery); *McKinney v. Starbucks Corp.*, No. 2:22-cv-02292, 2022 WL 5434206, at *1 (W.D. Tenn. Aug. 18, 2022) (stating that the court had ordered expedited discovery); *see also id.* at Dkt. No. 79 at 2 (exhibit list reflecting deposition transcripts).[4]

The Board argues that discovery is unnecessary and should be precluded because its pleadings, witness affidavits, and documentary evidence are sufficient to carry its "modest

---

[3] Starbucks disputes the applicability of the good cause standard, Dkt. No. 59 at 4, but even if that standard applies, it has been met as set forth below. And regardless, the parties agree that if discovery is allowed, it should be conducted expeditiously. Dkt. No. 41 at 1 (moving "for an order establishing an expedited discovery schedule"); Dkt. No. 54 at 2 (seeking "speedy interim relief").

[4] In its reply, Dkt. No. 54 at 7, the Board relies on *Overstreet v. Absolute Healthcare*, where the court limited discovery to a single deposition of a discharged employee. No. CV-22-00361-GMS, Dkt. No. 14, (D. Ariz. Apr. 21, 2022). But there, unlike in this case, the administrative record was complete and the ALJ had issued a decision. *Id.* at 2–3.

ORDER REGARDING HOOKS' MOTION FOR AN EXPEDITED HEARING, ETC. AND STARBUCKS' CROSS-MOTION FOR EXPEDITED DISCOVERY, ETC. - 6

burden," and the Court should give the Board's position the "benefit of the doubt." Dkt. No. 19 at 4–5. In support of this argument, the Board cites Second Circuit and Seventh Circuit cases. *Id.* at 4 (citing *Seeler v. The Trading Port, Inc.*, 517 F.2d 33, 36-37 (2d Cir. 1975)); *Squillacote v. Graphic Arts Int'l Union*, 540 F.2d 853, 858–59 (7th Cir. 1976) ("*Graphic Arts II*"). But *Graphic Arts II* was a Section 10(*l*) case, and the Seventh Circuit subsequently "disavow[ed] the language in earlier cases that equated § 10(j) and § 10(*l*)," emphasizing that "[o]nce the Board seeks injunctive relief under § 10(j), the only question for the court is whether the Board has demonstrated that relief is 'just and proper' under the approach traditionally applied to equitable cases filed by public agencies." *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir. 1989); *see also id.* at 488 ("[T]here has been anything but unanimity among the circuits on the question what it takes for the Director to demonstrate reasonable cause."). For its part, the Second Circuit has recognized "a circuit split with respect to the proper standard for granting a § 10(j) petition." *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013). Unlike the Ninth Circuit, the Second Circuit retains the "reasonable cause" test in its hybrid approach to 10(j) petitions. *Glasser ex rel. N.L.R.B. v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 485 n.2 (6th Cir. 2010). Here, the Board is not entitled to an unchallenged "benefit of the doubt" at this stage where it has not yet held a hearing or issued a decision. Rather, "it is the courts of appeals which are obliged to afford deferential review to final Board determinations, not the district courts in response to preliminary requests." *Miller*, 19 F.3d at 458; *see also United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767, 777 (9th Cir. 2017) (explaining the appellate court's standard of review for Board decisions, including affording "special deference" to the Board's credibility findings (cleaned up)). Accordingly, district courts confronted with 10(j) requests still consider the *Winter* factors and "exercise judgment rather than simply sign[ing] off on Board requests" for injunctions. *Miller*, 19 F.3d at 458; *see also Hooks v. Nexstar Broad., Inc.*, 54 F.4th 1101, 1114 (9th Cir. 2022)

ORDER REGARDING HOOKS' MOTION FOR AN EXPEDITED HEARING, ETC. AND STARBUCKS' CROSS-MOTION FOR EXPEDITED DISCOVERY, ETC. - 7

("The propriety of injunctive relief must be evaluated on a case-by-case basis in accord with traditional equitable principles and without the aid of presumptions or a 'thumb on the scale' in favor of issuing such relief.") (cleaned up)

As for the nature of Board's burden in 10(j) proceedings, "the Board can make a threshold showing of likelihood of success by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory." *Miller*, 19 F.3d at 460. But that standard does not obviate the responding party's Rule 26 right to conduct discovery regarding the likelihood of success or the other *Winter* factors.

The Board also argues that its motion for a preliminary injunction requires expedited treatment under the Federal Courts Civil Priorities Act. Dkt. No. 19 at 2; *see also* 28 U.S.C. § 1657(a) (courts "shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief"). Starbucks does not dispute that the motion deserves prompt consideration, but seeks expedited discovery before the Court issues a decision. Dkt. No. 41 at 9–19. Indeed, the two paths are not mutually exclusive: the Court can allow expedited discovery and still consider the matter promptly after discovery has concluded. Even setting aside the avoidable delays caused by the Board having to refile its petition several times due to its multiple violations of the Local Civil Rules and this Court's Orders, *see* Dkt. Nos. 1, 5, 17, 18, 22, 62, 63, 69, the Board's assertion that expedited discovery would problematically delay resolution rings hollow after its other delays, including scheduling a hearing for nine months after consolidating the complaints and waiting for over a year to bring this action after Starbucks announced its decision to create the Heritage District. *See* Dkt. No. 22 at 16 (May 6, 2022 decision to create the Heritage District); Dkt. No. 1 (July 2023 filing of this action); Dkt. No. 22 at 12 (NLRB consolidating the complaints in March 2023 and scheduling the hearing for December 2023); *see also, e.g.*, *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("[A] long delay before seeking a preliminary injunction implies

a lack of urgency and irreparable harm" but "such tardiness is not particularly probative in the context of ongoing, worsening injuries." (cleaned up)). Although the Board claims that the ongoing situation "will continue to . . . undermine any remaining support for the Union within the three downtown Seattle stores comprising the Heritage District (as well as throughout the Seattle area)," Dkt. No. 19 at 3, it is unlikely that support will degrade appreciably in the brief time it takes to conduct expedited discovery. Accordingly, allowing limited discovery will not prejudice the Board or violate the statutory requirement to expedite consideration of motions for preliminary injunctive relief.

Furthermore, Starbucks has demonstrated a need to conduct some discovery. Although it would be premature for the Court to delve into the propriety of any specific discovery requests before they have been propounded and before the parties have met and conferred, it suffices to say that at least some of Starbucks' requested areas of discovery are reasonable, including depositions of the individuals who submitted affidavits to allow Starbucks to explore the basis for the assertions therein. Dkt. No. 5-2; *see, e.g.*, *Overstreet v. Absolute Healthcare*, No. 2:22-CV-22-00361-GMS, Dkt. No. 14 at 4 (D. Ariz. Apr. 21, 2022) (allowing deposition of discharged employee); *Drew-King v. Amazon.com Servs., LLC*, 1:22-cv-01479-DG-SJB, Dkt. No. 31 at 11–12 (E.D.N.Y. March 30, 2022) (allowing depositions of the four affiants).[5] And although the Board argues that it has already produced its supporting evidence so "there will be little, if anything, else it could produce," Starbucks is not required to take that assertion at face value without discovery. Dkt. No. 19 at 9. In light of the relevance of at least some of the information sought, "it would be

---

[5] As the Board notes, it would be premature for the Court to opine on the appropriate scope of discovery before Starbucks has provided its discovery requests because the Court must evaluate the breadth of the requests, their purpose, and the burden of compliance. Dkt. No. 19 at 10. Starbucks agrees that prospective limitations would be inappropriate because it has not yet served discovery requests or deposition notices and the parties have not yet met and conferred regarding the scope of discovery. Dkt. No. 41 at 20; *see also* Fed. R. Civ. P. 26(c), 37(a)(1); LCR 26(c), 37(a). The parties are reminded that they "must meet and confer to an impasse." *Brantigan v. Deputy Spine, Inc.*, No. C08-0177-RSL, 2008 WL 4279405, at *1 (W.D. Wash. Sept. 12, 2008).

against the interests of true justice to foreclose respondent from an opportunity to investigate and discover evidence in support of its position." *Madden*, 229 F. Supp. at 493 (cleaned up). That conclusion is bolstered by the fact that 10(j) injunctions, if granted, are "often of long duration." *Id.* at 492–93. And the injunction the Board seeks here is broad, including "reinstatement of the 33 terminated/not-rehired employees and restoration of operations at the three downtown Seattle stores to their pre-HD status[.]" Dkt. No. 22 at 29.[6] In light of the potential duration and breadth of an injunction (if granted), Starbucks is entitled to some discovery. Accordingly, balancing the need for expedited consideration against Starbucks' right to conduct discovery and respond to the petition for a preliminary injunction, the Court finds good cause to allow expedited discovery.

### C.   The Court Defers the Request for an Evidentiary Hearing

The Board asks the Court to decide the matter solely on affidavit and documentary evidence. Dkt. No. 19 at 5. Starbucks requests that the Court order a hearing and take evidence. Dkt. No. 41 at 19. The Court defers ruling on both requests because an evidentiary hearing may be unnecessary following discovery if the matter can be decided on the filings. Either party may file a supplemental brief of up to 4200 words regarding the propriety of an evidentiary hearing within 14 days of the conclusion of expedited discovery.

### III.   CONCLUSION

For all the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the parties' cross motions. Dkt. Nos. 19, 41. The Court will allow the parties to conduct discovery, and it will consider this matter on an expedited basis. The Court defers ruling on Starbucks' request for an evidentiary hearing and on the Board's request for the Court to decide the matter solely on affidavit and documentary evidence. The Court ORDERS the following regarding discovery:

---

[6] Starbucks contends that instituting the requested relief would degrade its enhanced customer service experiences in the Heritage District and hiring the 33 workers would potentially displace existing workers. Dkt. No. 46 at 4–5.

By November 3, 2023, Starbucks shall submit to Petitioner a proposed discovery plan indicating (a) what discovery it seeks and why, (b) a list of proposed deponents and why, (c) proposed time limits, in hours, for each deposition, (d) a proposed schedule for taking depositions, propounding discovery requests, and receiving responses, (d) a statement regarding whether Starbucks seeks to conduct the depositions in person or remotely and if in person, why a remote deposition is insufficient, and (e) a proposal on how to serve any deposition notices and/or subpoenas on current or former employees.

By November 10, 2023, Petitioner shall respond to Starbucks' proposed discovery order including proposing any discovery he seeks to conduct.

Within five days thereafter, the parties must meet and confer on the proposed discovery plan to an impasse as required by Local Civil Rule 37. If the parties agree on a plan, they must file with the Court with a Notice to that effect and a proposal to submit supplemental briefs regarding the pending motion for a preliminary injunction after discovery has been conducted. If the parties are unable to agree on any portion of the discovery plan, they may submit a joint motion to the Court under Local Civil Rule 37(a)(2) for resolution that addresses both the discovery issues and their proposals for supplemental briefing.

Dated this 27th day of October, 2023.

Lauren King
United States District Judge